UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

FLENOID GREER,

                Plaintiff,                 Case No. 2:10-cv-221

v.                                     Honorable Robert Holmes Bell

PATRICIA L. CARUSO et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I. Factual allegations

Plaintiff is incarcerated in the Kinross Correctional Facility pursuant to a sixty to ninety-year sentence imposed by the Wayne County Circuit Court after Plaintiff was convicted of second-degree murder in 1990. In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections Director Patricia Caruso, Michigan Parole Board Chairperson Barbara Sampson, Grievance Appeal Manager Richard Russell, Warden Jeff Woods, Administrative Assistant Michael Sibbald, Grievance Coordinator Lou Berlinger and Assistant Resident Unit Supervisor William Bonnee.

Plaintiff claims that changes to Michigan's parole laws in 1992 negatively impacted prisoners with long indeterminate sentences in violation of the Ex Post Facto Clause. Plaintiff alleges that before 1992, he would have been eligible for parole after four years and would have received an interview every two years thereafter. However, the parole board informed Plaintiff in 2009 that he would not be eligible for parole until January 19, 2040. Plaintiff asked Defendant Bonnee to prepare a Parole Eligibility Report (PER), which must be completed before a parole hearing can be scheduled. Bonnee told Plaintiff that under the current regulations, a PER would not be prepared because Plaintiff was not eligible for a parole hearing. Plaintiff filed a Step I grievance against Bonnee concerning the matter. Plaintiff's grievance was rejected by Defendants Berlinger and Sibbald because Plaintiff's grievance concerned the content of a policy, which is non-grievable. The Step I decision was upheld at Step II by Defendant Woods. Plaintiff's Step III grievance appeal subsequently was denied by Defendant Russell.

Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that changes to Michigan's parole laws in 1992 negatively impacted prisoners with long indeterminate sentences in violation of the Ex Post Facto Clause. The Ex Post Facto Clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (citations omitted). When an inmate challenges an allegedly ex post facto parole law, this Court "must examine the relevant law in effect at the time [the inmate's] offense was committed and compare it with the retroactively-applied version of the law." *Shabazz v. Gabry*, 123 F.3d 909, 912 (6th Cir. 1997). The "focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether [the] change . . . increases the penalty by which a crime is punishable." *Morales*, 514 U.S. at 506 n.3.

In support of his ex post facto claim, Plaintiff relies upon a decision issued by the Eastern District of Michigan in *Bey v. Rubitschun*, No. 05-71318, 2008 WL 7020690 (E.D. Mich. Oct. 23, 2008), in which the court held that the "change in the make-up of the Michigan Parole Board, the Board's understanding of why the change occurred and how it was to exercise its discretion, its redefining of the eligibility procedure for [inmates sentenced to parolable life], and changes to the timing and intervals of the interview and review process, when considered in total have significantly disadvantaged the class and constitute a violation of the Ex Post Facto Clause." 2008 WL 7020690, at *23. However, that decision was reversed by the Sixth Circuit Court of Appeals in *Foster v. Booker*, 595 F.3d 353 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 225 (2010). In *Foster*, the Sixth Circuit held that the plaintiffs, inmates sentenced to life imprisonment with the possibility of parole, failed to make out an ex post facto claim based on statutory changes to Michigan's parole regime. 595 F.3d at 361-67.

Moreover, the changes to the parole system at issue in *Foster* do not apply to Plaintiff because he is not serving a parolable life term. Rather, he received an indeterminate sentence of sixty to ninety years. In *People v. Johnson*, 364 N.W.2d 654 (Mich. 1984), the Michigan Supreme Court addressed the distinction between "Proposal B" and the "lifer law." Under MICH. COMP. LAWS § 791.234(4), also known as the "lifer law":

> A prisoner under sentence for life or for a term of years, other than prisoners sentenced for life for murder in the first degree and prisoners sentenced to life or for a minimum term of imprisonment for a major controlled substance offense, who has served 10 calendar years of the sentence, is subject to the jurisdiction of the parole board and may be released on parole by the parole board . . . .

Proposal B, an initiatory provision adopted by the voters in 1978 became M.C.L. § 791.233b and provided in relevant part:

> A person convicted and sentenced for the commission of any of the following crimes shall not be eligible for parole until the person has served the minimum term imposed by the court which minimum term shall not be diminished by allowances for good time, special good time, or special parole.

The Michigan Supreme Court held that while MICH. COMP. LAWS § 791.234(4) applied to parolable life terms, MICH. COMP. LAWS § 791.233b, continued to apply to indeterminate sentences:

> We hold that Proposal B applies only to indeterminate sentences. Its express provisions are binding on the parole board, and the board may not release on parole, before the expiration of the minimum term fixed by the sentencing judge, any person given an indeterminate sentence for the crimes specified after the proposal's effective date.

364 N.W.2d at 656. Second-degree murder, the offense for which Plaintiff was convicted, is among the crimes listed requiring service of the minimum term before parole is available. MICH. COMP. LAWS § 791.233b(n). Accordingly, at the time Plaintiff's sentence for second-degree murder was imposed in 1990, he was not entitled to parole until he served his minimum sentence.

Plaintiff's belief that he was entitled to parole after four years under pre-1992 law also is based upon statutory provisions applicable to prisoners with parolable life sentences. Beginning in 1982, inmates sentenced to parolable life could expect an initial interview after four-years with subsequent interviews every two year. 1982 Mich. Pub. Acts No. 314 at p. 1356 (§ 34(4)(a)) (emphasis added). The Michigan Legislature changed the law again a decade later such that, as of 1992, a board member is not statutorily required to interview an inmate sentenced to parolable life before the inmate comes within the board's jurisdiction. Rather, the initial interview is required only after the inmate has served ten years. MICH. COMP. LAWS § 791.234(8)(a); *see* 1992 Mich. Pub. Acts No. 181 at p. 1127 (§ 34(4)(a)). As previously discussed, Plaintiff was not sentenced to parolable life, thus, these statutory provisions were inapplicable for purposes of determining his parole eligibility. Even if they did apply, the Sixth Circuit concluded in *Foster* that the 1992 amendments to MICH. COMP. LAWS § 791.234 did not violate the Ex Post Facto Clause. Plaintiff, therefore, fails to state an ex post facto claim.

Plaintiff also sues Defendants Berlinger, Sibbald, Woods and Russell for denying his grievance and grievance appeals. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28,

1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: December 3, 2010         /s/ Robert Holmes Bell
                                ROBERT HOLMES BELL
                                UNITED STATES DISTRICT JUDGE